## 51954. PARR v. PALMYRA PARK HOSPITAL, INC.

WEBB, Judge.

John Parr was scheduled for a prostatectomy by Dr. Kevin Lane, a urologist, at a public hospital in Albany and was told by Dr. Lane to obtain blood from private sources and have it on standby as he would probably require transfusion. The surgery was subsequently performed, however, at the appellee hospital, a private facility where blood for transfusions is made available by the hospital as a service for physicians. Dr. Lane made no determination as to whether blood would be available there and Palmyra Park Hospital does not require patients to supply blood in advance of use. The hospital administrator never spoke to Parr regarding blood prior to the surgery. Dr. Lane could not remember specifically telling Parr about the risk of hepatitis associated with blood transfusions but he discussed the risk of surgery in general quite extensively.

During the course of surgery Parr required two blood transfusions. One unit of the blood was obtained from a voluntary donor and the other from a commercial blood bank. Parr contracted acute hepatitis and filed a three

count complaint alleging that the hepatitis was the result of receiving "unwholesome, impure and adulterated" blood supplied by the appellee hospital. Counts 2 and 3 were stricken pursuant to Code Ann. § 105-1105, which defines the transfusion of blood as a service rather than a sale and makes liability contingent upon proof of negligence.

Count 1, sounding in negligence, was based upon the premise that a hospital utilizing blood obtained from paid donors has a duty to warn a patient admitted for elective surgery of the increased risk of hepatitis he will encounter as a consequence of the expected transfusion. The hospital's motion for summary judgment was granted as a result of the trial court's application of this court's recent decisions in *Young v. Yarn,* 136 Ga. App. 737 (222 SE2d 113) and *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 666 (8) (222 SE2d 162), and is the subject of the instant appeal. We affirm.

Those cases held that "Until 1971 there was some question as to whether the 'Informed Consent Doctrine' was applicable to our state. See *Mull v. Emory University, Inc.,* 114 Ga. App. 63, 65 (5) (150 SE2d 276). That year the General Assembly enacted the Georgia Medical Consent Law (Ga. L. 1971, pp. 438, 441) adding Chapter 88-29 to the Code. In that statute the legislature declared in § 88-2906 the following: 'A consent to medical and surgical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms hereof, shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same.' (Ga. L. 1971, pp. 438, 440).

"In *Young v. Yarn,* 136 Ga. App. 737, we derived from that statutory directive the following conclusion: 'The legislature has defined the physician's duty of disclosure to his patient; the physician must inform the patient of the general terms of treatment in order to effect a valid consent. In that we have decided that this duty does not include a disclosure of "risks of treatment," appellant cannot sustain an action alleging that defendant

breached his duty in failing to warn of the risks of treatment or that her consent was thereby rendered invalid.'" *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 667, supra.

The statute refers to "medical and surgical treatment" and there is nothing in its language which would restrict such treatment to that administered by a "duly licensed physician," rather than a hospital. Moreover, the evidence in this case clearly shows that the hospital's only contact with the plaintiff-patient was through his personal physician who explained to him the risks incident to the proposed surgery. The hospital had no dealings with the plaintiff, merely following orders of the physician which was normal procedure. The blood supplied by the hospital was supplied as a service by the hospital to the surgeons operating there.

*Young* and *Kenney* interpreted the statute to require that a physician need only disclose in general terms the treatment to be rendered in order to effect a valid consent; that this duty does not include a disclosure of "risks of treatment"; and that an action alleging that the defendant breached his duty in failing to warn of the risks of treatment, or that the consent was thereby rendered invalid, cannot be sustained. Thus, the traditional doctrine of informed consent has been specifically rejected and whatever information must be disclosed as to the general course of treatment under the Georgia statute does not include legally specified risks.[1] Surely if the physician who is treating the patient, who has responsibility for seeing that he is properly treated and that blood is available, and who is the only one who has personal contact with the patient is required to do no more than inform the patient of the general terms of treatment and is not required to disclose the risks of treatment, the hospital, which deals only with the doctor and supplies blood for his patient as a service for the physician is under

---

[1]But see Canterbury v. Spence, 464 F2d 772 (D.C.C.A. 1972), cert. den., 409 U.S. 1064 (93 SC 560, 34 LE2d 518), holding that the physician's duty to disclose arises from legal obligation, not from customary medical practice.

no greater obligation or higher standard of disclosure. To require a hospital to contact a patient to discuss the risks of a surgical procedure involving the transfusion of blood would be a presumptuous invasion of the province of the physician, on whom rests the responsibility of the patient's welfare.

We further conclude that no written consent is required. The *Young* opinion clearly indicates that a properly drafted consent form obtained in conformity with the Georgia Medical Consent Law would bar a potential claim by making such consent "conclusively valid." However, where the form is inadequate as in *Young,* or where there is no written consent shown as in the instant case, summary judgment could still be obtained by establishing that the plaintiff-patient knew, from any source,[2] the general course of treatment to be undertaken. See generally, Tanner & Schroder, Medical Malpractice, 12 Ga. SBJ 197 (April, 1976). Therefore, under the evidence in this case, the trial court properly granted summary judgment as against the plaintiff's contention that the defendant hospital was negligent in not informing the plaintiff of the alleged greater risk incident to the use of commercial blood.

*Judgment affirmed. Bell, C. J., Clark, Stolz, Marshall and McMurray, JJ., concur. Deen, P. J., and Quillian, J., dissent. Smith, J., not participating.*

ARGUED APRIL 12, 1976 — DECIDED SEPTEMBER 7, 1976.

*Malone & Percilla, Thomas Wm. Malone,* for appellant.

*Watson, Spence, Lowe & Chambless, G. Stuart Watson,* for appellee.

---

[2]Compare Bly v. Rhoads, 222 SE2d 783 (Va. 1976), requiring expert testimony to establish the existence and extent of the physician's duty to make those disclosures which a reasonable medical practitioner would make under the same or similar circumstances.

QUILLIAN, Judge, dissenting.

While on the trial of a negligence case, the burden is on the plaintiff to establish the defendant's negligence, on motion for summary judgment, where the movant is the defendant, then he has the burden of producing proof which conclusively negates at least one essential element entitling plaintiff to a recovery under every theory fairly drawn from the pleadings and the evidence. *Saunders v. Vikers,* 116 Ga. App. 733 (2) (158 SE2d 324). Here, the plaintiff contracted hepatitis after an operation in which he was given blood transfusion of two pints. One pint was donor blood, that is, voluntarily donated to the defendant hospital. The other pint was so-called commercial blood, in which the donor was paid, rather than donated. That pint was furnished by a commercial blood source in Columbus.

An issue was raised as to whether the use of the commercial blood entailed greater risk than donor blood. The defendant hospital introduced proof that, in its experience and that of its doctors, commercial blood was not a significant factor in transmitting hepatitis. A doctor for the plaintiff, who was reputed to be an authority, by affidavit, stated that blood obtained from paid donor sources carries with it a significantly higher risk of contracting transfusion-related hepatitis than does blood obtained from volunteers.

"While opinion evidence adduced by the respondent is sufficient to preclude the grant of a summary judgment (see *Word v. Henderson,* 220 Ga. 846 (142 SE2d 244)), it does not follow that the introduction of opinion evidence by the movant will authorize the grant of a summary judgment. . ." *Harrison v. Tuggle,* 225 Ga. 211, 213 (167 SE2d 395).

Issues of negligence are, ordinarily, not susceptible of summary adjudication, but must be resolved on trial. *Wakefield v. A. R. Winter Co.,* 121 Ga. App. 259 (174 SE2d 178). "[T]he jury is the arbiter of the question of whether a defendant's conduct on a given occasion is negligent. . ." *Garrett v. Royal Bros. Co.,* 225 Ga. 533 (170 SE2d 294).

Although the defendant introduced proof which tended to show that it was not negligent and did exercise

care, it did not conclusively establish that the plaintiff could not recover.

Moreover, the case cited by the majority, *Young v. Yarn,* 136 Ga. App. 737 (222 SE2d 113), which construed Code Ann. § 88-2906 (Ga. L. 1971, pp. 438, 441) is not controlling under the present circumstances.

Assuming arguendo that the statute in question (Ga. L. 1971, p. 438 et seq.) applies to hospitals although it contains throughout its terms the expression "by a duly licensed physician," in the case sub judice there was no showing that the requirements of the statute were met. In *Young v. Yarn,* supra, there was a written and signed consent form which was, however, imperfect in not disclosing the general terms of treatment. This consent was obtained by the physician who did disclose such general terms of treatment. Here, there is not an iota of evidence that the hospital gave the plaintiff any information with regard to the blood, nor that it obtained his written consent.

Where a doctor instructs the hospital to provide blood for the patient, and the hospital takes the blood sample from the patient, provides the laboratory analysis, then selects the type of blood, either from donor or commercial blood or both, administers the blood to the patient, and bills the patient (not the doctor) the disclaimer of the hospital that it was merely providing a service to the doctor will not suffice.

The testimony of the physician was that he told the plaintiff (patient) that the plaintiff should obtain blood from the blood bank and that the plaintiff would need to replace it. Thus, construing the evidence in favor of the party opposing the motion, the blood was furnished by the hospital to the patient and not to the doctor. Hence, any relation that existed with regard to the blood was between hospital and patient, not doctor-patient.

Under the applicable statute, Code Ann. § 88-2906, if the doctor is required to "disclose in general terms the treatment or course of treatment . . . duly evidenced in writing and signed by the patient" then why should the hospital be entitled to the protection of this statute without meeting the minimal requirements contained in the statute?

When a hospital asserts the protection of Code Ann. § 88-2906 it must, of necessity, show its compliance with the statute. It would have to show that any medical procedure, or medical service furnished the patient, was disclosed "in general terms . . . [and] duly evidenced in writing and signed by the patient. . ." A hospital will not be permitted to insulate itself from its negligence on the grounds that the hospital patient was a patient of the doctor, and they would be violating the "doctor-patient" privilege by explaining the medical procedure or medical service provided by the hospital to the patient.

The terms of the statute are plain: where its requirements are met then a consent shall be conclusively presumed to be valid. Where, as here, none of the essential elements are shown then a summary judgment should not be granted merely to impose considerations of public policy which cannot be separated from compliance with the statute.

I would hold that it was error to grant defendant's motion for summary judgment.

I am authorized to state that Presiding Judge Deen joins in this dissent.