## 40055. ROBINSON et al. v. PARRISH et al.

WELTNER, Justice.

We have received from the United States Court of Appeals for the Eleventh Circuit the following certified questions:

"1. Whether the Georgia Voluntary Sterilization Act, OCGA § 31-20-2 [Code Ann. § 84-932], requires a physician to disclose any possible risks and complications associated with a sterilization procedure before a patient can validly consent to that procedure?

"2. If the answer to Question 1 is in the affirmative, are Appellants nonetheless conclusively bound by consents such as were executed in the circumstances of the present case where those documents were merely signed by Appellants without any accompanying explanation by the Appellee/doctor, or may they litigate the issue of valid consent?"

The parties have submitted the following joint statement of facts: on October 31, 1975, Dr. Joe E. Parrish performed a laparoscopic tubal ligation (sterilization procedure) on the appellant, Joan Robinson. During this operation, an intestinal wall was lacerated, requiring subsequent corrective surgery.

Prior to surgery, the doctor informed Mr. and Mrs. Robinson that the purpose of the operation was to prevent pregnancy; he also informed them that the sterilization would be permanent.

Also prior to surgery, the Robinsons signed two consent documents entitled "Request for Voluntary Sterilization Procedure" and "Consent to Operate or to Perform Special Diagnostic Procedures." The parties stipulate that prior to surgery, the doctor did not explain to the Robinsons the potential risks or complications associated with the performance of a laparoscopic tubal ligation.

The Robinsons filed this suit in the United States District Court for the Northern District of Georgia alleging negligence by the doctor. In addition to the issue of informed consent, the Robinsons allege that Mrs. Robinson was under medication at the time she signed the consent, thus rendering it invalid. After a jury verdict in favor of the doctor and a grant of new trial, the district court granted the doctor's motion for summary judgment. On appeal, the United States Court of Appeals certified this matter to our court.

We need address only the first certified question.

The Voluntary Sterilization Act, OCGA § 31-20-2 (Code Ann. § 84-932), requires "that prior to or at the time of such request [for sterilization] a full and reasonable medical explanation ... [be] given by such physician to such person as to the meaning and consequence of such operation." The Robinsons contend that the language "full and reasonable medical explanation . . . as to the meaning and

consequence of such operation" requires the physician to disclose any possible risks and complications of sterilization.

The Court of Appeals has addressed on numerous occasions the applicability of the doctrine of informed consent to the Georgia Medical Consent Law (OCGA § 31-9-6 (Code Ann. § 88-2906)). See *Butler v. Brown,* 162 Ga. App. 376 (290 SE2d 293) (1982); *Parr v. Palmyra Park Hospital,* 139 Ga. App. 457 (228 SE2d 596) (1976). Subsection (d) of this statute provides: "A consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms of this chapter shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same." OCGA § 31-9-6 (Code Ann. § 88-2906) has been interpreted to require that a physician inform the patient of the *general terms* of treatment. "[T]his duty does not include a disclosure of 'risks of treatment, . . .'" *Young v. Yarn,* 136 Ga. App. 737, 739 (222 SE2d 113) (1975).

The Georgia Medical Consent Law, however, specifically excludes sterilization procedures, and thus must be governed by the "existing law independently of the terms and provisions of this chapter." OCGA § 31-9-5 (Code Ann. § 88-2902).

The "existing law" is found in the language of the Voluntary Sterilization Act, which requires that the physician give "a full and reasonable medical explanation . . . as to the meaning and consequence of such operation." We find these words to mean that the physician must fully inform the patient of the *intended results* of sterilization, which is the permanent inability to have children. Specifically, the statute does not require a physician to disclose the possible risks and complications of the sterilization procedure.

*Certified question 1 answered in the negative. All the Justices concur, except Hill, C. J., and Smith, J., who dissent.*

DECIDED SEPTEMBER 26, 1983.

*Murphy, Witcher & Murphy, Jack F. Witcher, John W. Kilgo, Stephen E. Garner,* for appellants.

*Tisinger, Tisinger, Vance & Greer, David H. Tisinger, Thomas E. Greer,* for appellees.

*Winburn, Lewis & Barrow, Gene Mac Winburn, Wesley C. King, Jr.,* amicus curiae.

HILL, Chief Justice, dissenting.

Judge Cardozo began the doctrine of informed consent when he wrote:[1] "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages." Judge Cardozo had before him a case of trespass, not mere negligence, namely unauthorized surgery. However, the doctrine has been expanded to cases in which the patient authorized the treatment but was not informed of the risks.[2] Today, the doctrine appears to be applicable in negligence cases (i.e., a failure to warn constitutes negligence) as well as in cases in which battery is alleged.[3]

"Anglo-American law starts with the premise of thorough-going self determination. It follows that each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of life-saving surgery, or other medical treatment. A doctor might well believe that an operation or form of treatment is desirable or necessary but the law does not permit him to substitute his own judgment for that of the patient by any form of artifice or deception."[4]

It is true that the Georgia Court of Appeals has held that, by virtue of our Medical Consent Law, OCGA § 31-9-6 (Code Ann. § 88-2906), the requirement of informed consent does not exist in this state. *Parr v. Palmyra Park Hospital,* 139 Ga. App. 457, 459 (228 SE2d 596) (1976). However, we deal here not with the Medical Consent Law, applicable to medical treatment generally, but with the Voluntary Sterilization Act, OCGA § 31-20-2 (Code Ann. § 84-932).

Unlike medical treatment in general, which is more often than not, necessary, and therefore almost compulsory, sterilization is almost always elective surgery. In my view, where surgery is elective, the patient is entitled to be sufficiently informed so as to make an intelligent choice; i.e., the patient is entitled to be informed of possible risks and complications associated with the sterilization procedure.

I therefore would interpret our Voluntary Sterilization Act, OCGA § 31-20-2 (Code Ann. § 84-932), which requires that the physician explain the "consequence of such operation," to include

---

[1] Schloendorff v. Society of New York Hospital, 211 NY 125 (105 NE 92, 93) (1914).

[2] Simpson, Informed Consent, 76 Northwestern U. L. Rev. 172, 173-174 (1981).

[3] Natanson v. Kline, 186 Kan. 393 (350 P2d 1093) (1960).

[4] Natanson v. Kline, supra, note 3, 350 P2d at p. 1104.

the reasonably possible risks and complications. The doctor's argument here that the law merely requires that he explain that sterilization means that "You can't have any more babies" is to me an oversimplification and exceedingly narrow construction of legislative intent. I therefore would answer the question certified in the affirmative.

I am authorized to state that Justice Smith joins in this dissent.