Larry D. ROBINSON, Joan Robinson, Plaintiffs-Appellants,

v.

Dr. Joe E. PARRISH, et al., Defendants-Appellees.

No. 82–8580.

United States Court of Appeals, Eleventh Circuit.

Dec. 15, 1983.

Jack F. Witcher, John W. Kilgo, Bremen, Ga., for plaintiffs-appellants.

David H. Tisinger, Thomas E. Greer, Carrollton, Ga., for defendants-appellees.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Joan and Larry Robinson, the appellants, originally filed this diversity action in 1976 in the Northern District of Georgia. They claimed that the defendant-appellee, a medical doctor, negligently performed a laparoscopic tubal ligation on Mrs. Robinson in 1975. This surgical procedure is designed to permanently sterilize a woman and is relative risk free, but Mrs. Robinson's small intestine was punctured during the operation and she suffered serious pain and injury as a result. A jury subsequently found that the defendant did not negligently perform the operation. The Robinsons then moved for a new trial, claiming that the district court erred in failing to give jury instructions concerning "informed consent." Informed consent is a descriptive term referring to a requirement in many jurisdictions that a doctor fully explain all possible risks associated with a particular operation. The defendant responded to the Robinson's motion by arguing that informed consent is not a requirement under Georgia law, and that Georgia law only requires a patient be informed of the intended result of the surgery before valid consent is obtained. The district court reviewed the arguments, noted the absence of Georgia cases addressing the issue, and granted the Robinson's motion for a new trial solely on the question of whether the defendant doctor obtained the proper consent from Mrs. Robinson prior to surgery. The judge expressed an opinion that the doctrine of informed consent was applicable under Georgia law. The district court also certified the issue to the Fifth Circuit so that the defendant could seek an interlocutory appeal, but the court of appeals denied the request reasoning that the issue would be better addressed after the new trial.

Once again before the district court, but before a different judge, the parties stipulated two important facts for the first time. The parties agreed that Mr. and Mrs. Robinson were fully aware prior to surgery that the purpose of the operation was to permanently sterilize her. The parties also agreed that the defendant did not explain to the Robinsons any of the potential risks or complications associated with the procedure. The defendant then made a new motion for summary judgment on the issue of informed consent. The district judge found as a matter of law that Mrs. Robinson validly consented to the operation, and accordingly granted the motion. In other words, the district judge rejected the previous district judge's conclusion that the doctrine of informed consent was applicable under Georgia law.

The Robinsons now appeal raising three issues. First, they argue that the "law of the case" doctrine should have barred the second district judge from overturning a ruling made by the previous judge. Second, they claim that Georgia law requires a doctor to obtain informed consent prior to operating on a patient. And third, the Robinsons argue that there are still material facts in dispute even if informed consent is not applicable in Georgia, and thus summary judgment was improper. We affirm for the following reasons.

In regard to the first issue, the Robinsons are misguided in arguing that the "law of the case" doctrine should have barred the district judge below from ruling contrary to the previous district judge. The "law of the case" doctrine is "the rule under which the trial court and appellate

courts are bound by any findings of fact or conclusions of law made by the appellate courts in a prior appeal of the case at issue." *United States v. Burns,* 662 F.2d 1378 (11th Cir.1981). The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already conclusively decided. *White v. Murtha,* 377 F.2d 428 (5th Cir.1967). The issue normally arises in the context of a district court ignoring or contravening the ruling of a higher court in an earlier proceeding of the same case. *See, e.g., Wm. G. Roe Company v. Armour & Company,* 414 F.2d 862 (5th Cir.1969). In the present case, the district judge's decision to grant summary judgment on the issue of consent was contrary to a ruling made by the previous judge in the same litigation, but it did not contravene a ruling to which the latter judge owed obedience or adherence. To hold that a district court must rigidly adhere to its own rulings in an earlier stage of a case would actually thwart the purpose of the doctrine. New developments or further research often will convince a district court that it erred in an earlier ruling, or the court may simply change its mind. We believe it would be wasteful and unjust to require the court to adhere to its earlier ruling in such an instance.\* *See also* 1B Moore's Federal Practice § 0.404[1] (1982); *Gregg v. U.S. Industries, Inc.,* 715 F.2d 1522 (11th Cir.1983); *Morrow v. Dillard,* 580 F.2d 1284 (5th Cir. 1978).

■ The Robinsons also argue that Georgia incorporates the doctrine of informed consent and requires a physician to fully explain all possible risks and complications associated with a sterilization operation before a patient can validly consent to the surgery. Georgia law provides: "It shall be lawful for any physician . . . to perform a sterilization procedure . . . provided . . . that prior to or at the time of such request a full and reasonable medical explanation is given by such physician to such person *as to*

the meaning and consequence of such operation." Official Code of Ga.Ann. § 31–20–2 (Michie 1982), Ga.Code Ann. § 84–932 (Harrison 1981) (emphasis added). The judge below rejected this argument, concluding that the quoted language only requires a doctor to explain the purpose and intended result of surgery. Because Georgia law was unclear with regard to consent for a sterilization procedure, we certified this issue to the Georgia Supreme Court pursuant to Rule 36 of that court, Official Code of Ga.Ann. § 15–2–9 (Michie 1982), Ga.Code Ann. § 24–4536 (Harrison 1981). In *Robinson v. Parrish,* 251 Ga. 496, 306 S.E.2d 922 (1983) (attached hereto as an appendix), the Georgia Supreme Court addressed the issue and concluded, as did the district judge below, that the Georgia statute only requires a doctor to explain the intended result of the operation. Thus, the judge below used the proper legal standard in reviewing the defendant's motion to dismiss.

■ Finally, the Robinsons claim that there are still material issues of fact in dispute concerning the validity of Mrs. Robinson's consent, and therefore summary judgment was improper. We find this claim to be entirely meritless. The Georgia Supreme Court's opinion in this case expressly states that the Georgia Code provision only requires a physician to explain "the *intended result* of sterilization, which is the permanent inability to have children." *Robinson v. Parrish,* 251 Ga. at 496, 306 S.E.2d 922 [manuscript at 3]. Once the physician complies with this provision, Georgia law insulates the physician against all civil liability except a negligence action. Official Code of Ga.Ann. § 31–20–5 (Michie 1982), Ga.Code Ann. § 84–935.1 (Harrison 1981). In the present case, Mrs. Robinson stipulated to the fact that she was informed of the purpose of the sterilization procedure before she underwent surgery. Thus, her only proper theory of relief was negligence and the jury decided that issue against her.

---

\* As it turns out, the instant case is an excellent example of this potential problem. The second judge's decision to grant summary judgment was proper, while the previous judge's belief that informed consent is a part of Georgia law was incorrect. Had the second judge been required to follow the earlier ruling, the time and effort of a complete trial would have been wasted.

For the reasons stated above, the decision of the district court is

AFFIRMED.

## APPENDIX

In the Supreme Court of Georgia

40055. ROBINSON et al v. PARRISH et al

WELTNER, Justice.

We have received from the United States Court of Appeals for the Eleventh Circuit the following certified questions:

"1. Whether the Georgia Voluntary Sterilization Act, OCGA § 31–20–2, requires a physician to disclose any possible risks and complications associated with a sterilization procedure before a patient can validly consent to that procedure.

"2. If the answer to Question 1 is in the affirmative, are Appellants nonetheless conclusively bound by consents such as were executed in the circumstances of the present case where those documents were merely signed by Appellants without any accompanying explanation by the Appellee/doctor, or may they litigate the issue of valid consent?"

The parties have submitted the following joint statement of facts: On October 31, 1975, Dr. Joe E. Parrish performed a laparoscopic tubal ligation (sterilization procedure) on the appellant, Joan Robinson. During this operation, an intestinal wall was lacerated, requiring subsequent corrective surgery.

Prior to surgery, the doctor informed Mr. and Mrs. Robinson that the purpose of the operation was to prevent pregnancy; he also informed them that the sterilization would be permanent.

Also prior to surgery, the Robinsons signed two consent documents entitled "Request for Voluntary Sterilization Procedure" and "Consent to Operate or to Perform Special Diagnostic Procedures." The parties stipulate that prior to surgery, the doctor did not explain to the Robinsons the potential risks or complications associated with the performance of a laparoscopic tubal ligation.

The Robinsons filed this suit in the United States District Court for the Northern District of Georgia alleging negligence by the doctor. In addition to the issue of informed consent, the Robinsons allege that Mrs. Robinson was under medication at the time she signed the consent, thus rendering it invalid. After a jury verdict in favor of the doctor and a grant of new trial, the district court granted the doctor's motion for summary judgment. On appeal, the United States Court of Appeals certified this matter to our court.

We need address only the first certified question.

The Voluntary Sterilization Act, OCGA § 31–20–2 (Code Ann. § 84–932), requires "that prior to or at the time of such request [for sterilization] a full and reasonable medical explanation ... [be] given by such physician to such person as to the meaning and consequence of such operation." The Robinsons contend that the language "full and reasonable medical explanation ... as to the meaning and consequence of such operation" requires the physician to disclose any possible risks and complications of sterilization.

The Court of Appeals has addressed on numerous occasions the applicability of the doctrine of informed consent to the Georgia Medical Consent Law (OCGA § 31–9–6 [Code Ann. § 88–2906]). See *Butler v. Brown,* 162 Ga.App. 376, 290 S.E.2d 293 (1982), *Parr v. Palmyra Park Hospital,* 139 Ga.App. 457, 228 S.E.2d 596 (1976). Subsection (d) of this statute provides: "A consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms of this chapter shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same." OCGA § 31–9–6 (Code Ann. § 88–2906) has been interpreted to require that a physician inform the patient of the *general terms* of treatment. "[T]his

duty does not include a disclosure of 'risks of treatment....'" *Young v. Yarn,* 136 Ga.App. 737, 739, 222 S.E.2d 113 (1975).

The Georgia Medical Consent Law, however, specifically excludes sterilization procedures, and thus must be governed by the "existing law independently of the terms and provisions of this chapter." OCGA § 31–9–5 (Code Ann. § 88–2902).

The "existing law" is found in the language of the Voluntary Sterilization Act, which requires that the physician give "a full and reasonable medical explanation ... as to the meaning and consequence of such operation." We find these words to mean that the physician must fully inform the patient of the *intended results* of sterilization, which is the permanent inability to have children. Specifically, the statute does not require a physician to disclose the possible risks and complications of the sterilization procedure.

*Certified question 1 answered in the negative.*

All the Justices concur, except HILL, C.J., and SMITH, J., who dissent.

HILL, Chief Justice, dissenting.

Judge Cardozo began the doctrine of informed consent when he wrote:[1] "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages." Judge Cardozo had before him a case of trespass, not mere negligence, namely unauthorized surgery. However, the doctrine has been expanded to cases in which the patient authorized the treatment but was not informed of the risks.[2] Today, the doctrine appears to be applicable in negligence cases (i.e., a failure to warn constitutes negligence) as well as in cases in which battery is alleged.[3]

"Anglo-American law starts with the premise of thorough-going self determina-

tion. It follows that each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment. A doctor might well believe that an operation or form of treatment is desirable or necessary but the law does not permit him to substitute his own judgment for that of the patient by any form of artifice or deception."[4]

It is true that the Georgia Court of Appeals has held that, by virtue of our Medical Consent Law, OCGA § 31–9–6 (Code Ann. § 88–2906), the requirement of informed consent does not exist in this state. *Parr v. Palmyra Park Hospital,* 139 Ga.App. 457, 459, 228 S.E.2d 596 (1976). However, we deal here not with the Medical Consent Law, applicable to medical treatment generally, but with the Voluntary Sterilization Act, OCGA § 31–20–2 (Code Ann. § 84–932).

Unlike medical treatment in general, which is more often than not, necessary, and therefore almost compulsory, sterilization is almost always elective surgery. In my view, where surgery is elective, the patient is entitled to be sufficiently informed so as to make an intelligent choice; i.e., the patient is entitled to be informed of possible risks and complications associated with the sterilization procedure.

I therefore would interpret our Voluntary Sterilization Act, OCGA § 31–20–2 (Code Ann. § 84–932), which requires that the physician explain the "consequence of such operation", to include the reasonably possible risks and complications. The doctor's argument here that the law merely requires that he explain that sterilization means that "You can't have any more babies" is to me an oversimplification and exceedingly narrow construction of legislative intent. I therefore would answer the question certified in the affirmative.

I am authorized to state that Justice SMITH joins in this dissent.

1. *Schloendorff v. Society of New York Hospital,* 211 N.Y. 125, 105 N.E. 92, 93 (1914).

2. Simpson, Informed Consent, 76 Northwestern ULR 172, 173–174 (1981).

3. *Natanson v. Kline,* 186 Kan. 393, 350 P.2d 1093 (1960).

4. *Natanson v. Kline,* supra, note 3, 350 P.2d at p. 1104.