76291. DOHN et al. v. LOVELL et al.
76337. DOHN v. KELLY et al.
(370 SE2d 789)

SOGNIER, Judge.

We granted the applications for interlocutory appeal made by Carl Dohn, M.D., Patrick Godbey, M.D., James Gowen, M.D. and Marcus Norvell, M.D., d/b/a Golden Isles Women's Specialist, from the denial of their motions for summary judgment in a medical malpractice case filed by Charlotte and James Lovell in Case No. 76291 and granted the application for interlocutory appeal made by Carl Dohn, M.D., in the medical malpractice case filed by Eloise and Lewis Kelly in Case No. 76337, in order to address questions arising under the construction of the Georgia Voluntary Sterilization Act, OCGA § 31-20-1 et seq. Both appeals are consolidated in this opinion.

The Georgia Voluntary Sterilization Act was enacted in 1966 for the purposes, inter alia, of setting forth the conditions under which sterilization procedures would be authorized as to consenting persons, and to protect doctors of medicine, and certain enumerated others, from civil liability or criminal prosecution in regard to such sterilization procedures. Ga. L. 1966, p. 453. The first of these purposes was codified in OCGA § 31-20-2, which currently provides in pertinent part: "It shall be lawful for any physician . . . to perform a sterilization procedure upon a person 18 years of age or over . . . provided that a request in writing is made by such person . . . and provided, further, that prior to or at the time of such request a full and reasonable medical explanation is given by such physician to such person as to the meaning and consequence of such operation." OCGA § 31-20-5 codifies the other pertinent purpose: "When an operation shall have been performed in compliance with this chapter, no physician duly licensed . . . shall be liable civilly or criminally as a result of such operation or participation therein, except in the case of negligence in the performance of such operation."

Turning to the facts to which application of these statutes pertains, in Case No. 76291, appellee Charlotte Lovell and her husband requested appellant Patrick Godbey, M.D., to perform a post-partum

sterilization. Mrs. Lovell stated in her deposition that upon broaching the matter to Godbey, he showed her a pamphlet which set forth various sterilization methods. Mrs. Lovell stated she told Godbey she wanted her tubes "cut, tied, and burnt," and when Godbey mentioned the use of a clip, she told him she "wasn't concerned with the clip, I wanted my tubes cut, tied, and burnt." Mrs. Lovell stated that after telling Godbey this, he responded: "Okay; that's what we'll do." In his deposition, Godbey stated that he did not remember Mrs. Lovell making any request as to the "cut and burn" method, i.e., tubal ligation, and that he would not have agreed to use such a method of sterilization in a post-partum situation such as Mrs. Lovell's. He stated he chose the method of sterilization and made the medical decision to use the Bleier clip in a tubal occlusion procedure upon the birth of the Lovells' child. Mrs. Lovell asserts that had Godbey informed her he would not follow her request as to the type of sterilization method she wished performed on her body but that he would use the Bleier clip, she would not have agreed to the sterilization operation. Shortly after the performance of the operation Mrs. Lovell became pregnant and instituted the present suit.

In Case No. 76337, appellee Eloise Kelly and her husband authorized a sterilization procedure by means of the Bleier clip on the recommendation of appellant Carl Dohn. It is uncontroverted that the Kellys were informed by Dohn that pregnancy might result despite the sterilization procedure. The Kellys assert Dohn informed them that the Bleier clip was "State of the Art" and was "99.9%" effective although Dohn knew, or should have known, that sterilization procedures employing the Bleier clip had a failure rate of approximately 10%. Mrs. Kelly contends that had she been informed of the "inordinately and unacceptably high rates of failure" due to use of Bleier clips she would not have agreed to that method of sterilization. Mrs. Kelly subsequently became pregnant and instituted the present suit in which only Count III, alleging battery, remained viable at the time of Dohn's motion for summary judgment.

It is the contention of appellants in both cases that they are exempt from all civil or criminal liability in the cases at bar under the language of OCGA § 31-20-5 in the absence of negligence in the actual performance of the sterilization operations. In support of this argument, appellants direct this court's attention to *Robinson v. Parrish*, 251 Ga. 496 (306 SE2d 922) (1983), which involved a medical malpractice case brought as a result of the laceration of the intestinal wall of the patient, Mrs. Robinson, during a sterilization procedure. It is apparent from the facts in the case that the laceration was not an intended or necessary action in the performance of the operation. The Supreme Court addressed the question whether the Georgia Voluntary Sterilization Act required a physician to explain to the Robin-

sons "the potential risk or complications associated with the performance of a laparoscopic tubal ligation." Id. In the context of these facts, the Supreme Court held that the requirement that the physician give " 'a full and reasonable medical explanation . . . as to the meaning and consequence of such operation' " meant that "the physician must fully inform the patient of the *intended results* of sterilization, which is the permanent inability to have children. Specifically, the statute does not require a physician to disclose the possible risks and complications of the sterilization procedure." Id. at 497.

We do not agree with appellants that the holding in *Robinson* construing the language in OCGA § 31-20-2 is applicable here in view of the distinguishable factual situation in *Robinson* which required the Supreme Court to address only that part of the statute requiring a full explanation of the "intended results" or *"consequence"* of a sterilization procedure insofar as the risks and complications associated with such a procedure were concerned. Nor do we agree with appellants that anything in *Robinson* demands we apply the Supreme Court's construction of OCGA § 31-20-2 generally to all possible factual circumstances. Thus, we reject appellants' contention that the sole requirement placed on a physician in OCGA § 31-20-2 is to inform a patient seeking a sterilization operation that the intended result of the operation is to render the patient permanently incapable of having children.

Likewise, we do not agree with appellants' arguments concerning the construction we should give OCGA § 31-20-2 in view of the facts of the cases sub judice. OCGA § 31-20-2 requires a physician to give "a full and reasonable medical explanation . . . as to the *meaning* and consequence of such operation." (Emphasis supplied.) There is no merit in the argument that "meaning" and "consequence" are synonymous. To interpret the Legislature's use of the word "meaning" as having precisely the same definition as "consequence" would be to render that term mere surplusage, thereby violating the well established rule of statutory construction that all the words of a statute are to be given due weight and that the courts should not so interpret a statute as to make parts of it surplusage unless no other construction is reasonably possible. *Undercofler v. Colonial Pipeline Co.*, 114 Ga. App. 739, 742-743 (152 SE2d 768) (1966).

Therefore, we construe "meaning . . . of such operation" to reference the nature of the sterilization operation and its significance to the party requesting such operation. Thus, the requirement in OCGA § 31-20-2 that "a full and reasonable medical explanation [be] given by such physician to such person as to the meaning and consequences of such operation," necessarily requires that a full and reasonable medical explanation be given by the physician to the person as to the *method* to be employed in such sterilization operation so that the pa-

tient will understand *how* his or her inability to have children will result. To hold otherwise would result in the anomalous situation where a patient requesting sterilization would be unable to select, much less be advised of, the sterilization procedure to be performed upon him or her.

Applying this holding to the facts of the individual cases, we affirm the trial court's denial of the motion for summary judgment in Case No. 76291 as to the construction to be given the Georgia Voluntary Sterilization Act. We agree with the trial court and the Lovells that due to the presence of conflicting evidence regarding the conversation between Mrs. Lovell and Godbey regarding what sterilization method was to be used on Mrs. Lovell, questions of fact exist whether the operation was performed in compliance with OCGA § 31-20-2 so as to entitle appellants in case No. 76291 to exemption from liability under OCGA § 31-20-5.

However, in an ancillary matter brought up in Case No. 76291, we must reverse the trial court's denial of summary judgment as to appellant Marcus Norvell, M.D. Norvell moved for summary judgment on the basis of his affidavit and deposition in which he averred that he was not a partner in Golden Isles Women's Specialist, but rather an employee of the three partners, and that his employment commenced subsequent to the sterilization procedure that gave rise to the Lovells' cause of action. Although the Lovells rely on the deposition testimony of appellant James Gowen, M.D. regarding the relationship of the doctors at Golden Isles Women's Specialist, that "[w]e share expenses at the office. We share call[s]. We share patients many times," Gowen went on to explain that although there were no legal papers, that the partnership to which he was referring consisted of himself, Dohn and Godbey, and that Norvell is "a salaried employee of the three of us." There being no evidence that Norvell was anything other than an employee engaged subsequent to Mrs. Lovell's sterilization procedure, the trial court erred by denying Norvell's motion for summary judgment. See generally *Bethune v. Leake*, 177 Ga. App. 330 (1) (339 SE2d 296) (1985).

In Case No. 76337, the Kellys do not contend they were misinformed as to the method of sterilization to be utilized or that Mrs. Kelly's requested method was disregarded. Mrs. Kelly knew Bleier clips would be used to effect the sterilization, knew the nature of the procedure, knew of the intended results of the sterilization procedure, and knew a possibility existed that any method used would fail. The basis of the Kellys' cause of action thus appears to be their assertion that because Dohn failed to represent correctly to them the precise percentages regarding the efficacy of the Bleier clip, there was no "full and reasonable medical explanation" as required under OCGA § 31-20-2, and thus the exemption from liability under OCGA § 31-20-5

does not arise to bar their claim of battery. (We note that the Kellys concede in their brief that Bleier clips were marketed for post-partum use, contrary to their assertion before the trial court, and thus that issue is not before us.)

It is not necessary, however, to reach the issue as to what constitutes a "full and reasonable medical explanation" under OCGA § 31-20-2 since the record reveals no evidence to rebut Dohn's affidavit testimony that at the time of Mrs. Kelly's sterilization operation in 1983, he was not aware of the high failure rate of the Bleier clip devices and did not become aware of such until late 1984, at which time he took steps to notify the Kellys of the greater than usual failure rate and conferred with them in early January 1985 about the matter. Although the Kellys asserted in interrogatory answers that questions regarding the failure rate of the Bleier clip device had arisen in 1981, the documentary evidence they submitted in support of this statement reveals that the article discussing the high failure rate was published in November 1984, which was the date of the article Dohn stated in his response to interrogatories first alerted him to the high failure rate. Thus, Dohn having carried his burden of piercing the Kellys' allegation that he knew or should have known about the high failure rate in regard to Bleier clip devices in 1983, and in the absence of any evidence rebutting Dohn's evidence so as to create a genuine issue for jury determination, the trial court erred by denying Dohn's motion for summary judgment in Case No. 76337. See generally *Taylor v. McDonald*, 183 Ga. App. 320, 321-322 (359 SE2d 1) (1987).

*Judgment in Case No. 76291 reversed as to appellant Norvell but otherwise affirmed. Judgment in Case No. 76337 reversed. Deen, P. J., and Carley, J., concur.*

DECIDED JUNE 3, 1988 —
REHEARING DENIED JUNE 14, 1988 —

*Terry A. Dillard, Bryant H. Bower, Jr.*, for appellants (case nos. 76291, 76337).
*Amanda F. Williams*, for Lovells.
*James P. Fields, Clyde Urquhart*, for Kellys.