A96A1199, A96A1200. ARIEMMA et al. v. PERLOW (two cases).
(477 SE2d 590)

RUFFIN, Judge.

David Perlow, M.D. performed a vasectomy on John Ariemma, after which Ariemma experienced chronic testicular pain. Ariemma sued Perlow for negligence, fraud, battery, and violations of Georgia's Fair Business Practices Act. Ariemma's wife sued Perlow for loss of consortium. Perlow moved for summary judgment on the ground that Ariemma's written request for the vasectomy exempted Perlow from liability under OCGA § 31-20-5. The trial court granted Perlow's motion in two separate orders, and in these two appeals the Ariemmas challenge those orders. For reasons which follow, we affirm.

"[S]ummary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case." *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). Viewed in this light, the record shows that Ariemma contacted Perlow's office requesting information concerning a vasectomy. In response to Ariemma's request, Perlow sent him literature containing general information about the procedure. The literature explained the procedure used, expected results, and the primary risks of infection and bleeding and addressed such concerns as recovery time and the risk of recanalization. After receiving this information, Ariemma made an appointment with Perlow to further discuss the procedure and to have it performed depending on what he learned.

At the appointment, Perlow asked Ariemma if he had read the literature, and Ariemma confirmed that he had. Ariemma testified in his deposition that Perlow then discussed with him everything that was in the literature concerning the procedure, including the risk of recanalization and the fact that Ariemma should consider the vasectomy irreversible. Similarly, Perlow testified in his deposition that during his initial consultation with patients he generally discusses the procedure and its results, then answers any questions the patients may have. Perlow stated that although he could not recall the specifics of his conversation with Ariemma, he "went through a process very much like the process [he goes through with other patients]."

Ariemma stated in his deposition that he asked Perlow "when the pain was going to go away." According to Ariemma, Perlow answered that he should "[l]ay down for the weekend, let your wife take care of you, don't run around or you can . . . get real big. . . . After the weekend, you'll be fine." When Ariemma asked Perlow whether it would affect him sexually, Perlow told him he had performed 1,500 of them. According to Ariemma, at that point he was "relieved . . . of any further questions."

Following this discussion, Ariemma signed a consent form for Perlow to perform the vasectomy. The form provided as follows: "I give permission to David L. Perlow, M.D. to perform a bilateral vasectomy on myself. I understand that this is a procedure which renders me *permanently* sterile. I understand that a sterile person is not capable of fathering children. . . . The nature of the Vasectomy procedure has been fully explained to me and understood by me as well as the risks, discomfort, possible complications and benefits. . . . I know that no guarantee or assurance has been made to me as to the results that may be obtained. I have read the informa-

tion sheet and all my questions have been answered." (Emphasis in original.)

Perlow performed the vasectomy that day. Ariemma went home, stayed in bed for two days, then went back to work. During Ariemma's second follow-up visit to Perlow five months later, Ariemma complained about pain in his right testicle. According to Ariemma, he has continued to experience chronic testicular pain.

Ariemma does not contend that Perlow was negligent in performing the vasectomy procedure, only that Perlow should have informed Ariemma of the future risk of experiencing chronic testicular pain.

The Georgia legislature has addressed the very issues presented by Ariemma in this appeal. The Georgia Voluntary Sterilization Act, OCGA §§ 31-20-1 to 31-20-6, was enacted in 1966 to limit the liability of qualified physicians who perform sterilization procedures. *Dohn v. Lovell*, 187 Ga. App. 523 (370 SE2d 789) (1988). OCGA § 31-20-5 provides in pertinent part that when a sterilization procedure has "been performed in compliance with this chapter, no physician duly licensed . . . shall be liable civilly or criminally as a result of such operation or participation therein, except in the case of negligence in the performance of such operation."

In this case, Ariemma contends that Perlow is not protected by the Act because he did not comply with OCGA § 31-20-2. That section provides that "[i]t shall be lawful for any physician to perform a sterilization procedure upon a person 18 years of age or over . . . provided that a request in writing is made by such person and provided, further, that prior to or at the time of such request a full and reasonable medical explanation is given by such physician to such person as to the meaning and consequence of such operation." Ariemma contends that Perlow obtained his request in this case through fraud. Specifically, Ariemma argues that in response to his questions, Perlow should have informed him of the long-term risk of chronic testicular pain and that he relied on the fact that no such risk was disclosed in signing the request.

Our appellate courts have held, however, that OCGA § 31-20-2 does not require a physician to disclose the possible risks and complications of the sterilization process. In *Robinson v. Parrish*, 251 Ga. 496 (306 SE2d 922) (1983), our Supreme Court reviewed the language in OCGA § 31-20-2 that requires the physician give " 'a full and reasonable medical explanation . . . as to the meaning and consequence of such operation.' " Id. at 496-497. The majority found "these words to mean that the physician must fully inform the patient of the *intended results* of sterilization, which is the permanent inability to have children." (Emphasis in original.) Id. at 497. The Court specifically held that "the statute does not require a physi-

cian to disclose the possible risks and complications of the sterilization procedure." Id. In later cases we elaborated on the disclosure requirements of OCGA § 31-20-2 and found that the statute requires the physician to give a full and reasonable explanation "as to the *method* to be employed in [the] sterilization operation so that the patient will understand *how* his or her inability to have children will result." (Emphasis in original.) *Dohn,* supra at 525-526. Accord *Gowen v. Cady,* 189 Ga. App. 473 (2) (376 SE2d 390) (1988).

The record in this case shows that Perlow complied with the disclosure requirements of OCGA § 31-20-2. Perlow informed Ariemma that he would perform a bilateral vasectomy, that he would cut the vas deferens to block the flow of sperm, that the procedure would render Ariemma infertile and incapable of fathering children, and that he should consider it irreversible. Whether another physician would have informed Ariemma of the risk of chronic testicular pain does not matter in this case. Under Georgia law, Perlow was not required to inform Ariemma of this risk and his failure to do so did not vitiate Ariemma's written request. See *Dohn,* supra. Compare *Butler v. Brown,* 162 Ga. App. 376, 378 (290 SE2d 293) (1982) (decided under analogous facts but governed by the Georgia Medical Consent Law, which does not apply to voluntary sterilizations. See *Robinson,* supra at 497).

Because the record shows that Perlow complied with OCGA § 31-20-2, and the Ariemmas have not claimed Perlow was negligent in performing the vasectomy procedure, their claims for negligence, fraud, battery, violations of Georgia's Fair Business Practices Act, and loss of consortium are barred by OCGA § 31-20-5. See *Cummings v. Dudley,* 180 Ga. App. 545 (349 SE2d 543) (1986). Although this may seem a harsh result, it is an issue for the legislature to address, not the courts. Accordingly, we must conclude that the trial court did not err in granting Perlow's motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 1, 1996 —
RECONSIDERATION DENIED OCTOBER 29, 1996 — 

*David S. DeLugas,* for appellants.
*Harman, Owen, Saunders & Sweeney, H. Andrew Owen, Jr., Rolfe M. Martin,* for appellee.