*Roger Mills,* for appellee.

66367. SIKORSKI v. BELL et al.

QUILLIAN, Presiding Judge.

The plaintiff Lilli Sikorski brought this action against three medical doctors seeking to recover damages for malpractice. The complaint alleged that the defendants in providing medical care to the plaintiff performed eye operations on her and as a result she lost the sight of both eyes; that the cause of plaintiff's injury was the failure of the defendants to exercise reasonable care and skill commensurate with the standard practiced by the medical community at the time and under the circumstances; that the defendants failed to properly evaluate and treat plaintiff's condition which brought about plaintiff's complete loss of vision. The complaint sought damages in excess of $10,000.

Each of the defendants answered and denied the material assertions of the complaint. The defendants then joined in a motion for summary judgment. In support thereof, each defendant filed an affidavit which, while not identical, set forth substantially the same facts. The plaintiff previously (in 1968) had cataract surgery in both eyes. At the time she was examined by one of the defendants (1979) she was suffering from advanced glaucoma which had reduced her vision to the classification of legally blind. Since the effects of glaucoma are irreversible, her already limited vision could only be retained by reducing the pressure on her eyes. Each of the doctors opined that the only possible method of accomplishing this was through surgery.

Each of the affidavits recited that prior to surgery the risks involved were explained to the plaintiff due to her age, prior cataract operations and the deterioration of her eyes. The primary risks were infection or suprachoroidal hemorrhage, either of which could cause total blindness. Each affiant swore that plaintiff was aware of this and elected to proceed with surgery in view of the prognosis that advancing glaucoma would render her blind absent surgical correction.

The affidavits then detailed the performance of the operations and set out that a suprachoroidal hemorrhage did occur to her left eye and that her right eye was not improved by corrective surgery. Follow-up operations and an attempted cornea transplant were also

not successful although it was stated that such treatment was not detrimental to the plaintiff. The doctors stated that plaintiff's worsened vision resulting from the hemorrhage was in no way attributable to the lack of due care, skill or diligence on their part; that the plaintiff's loss of vision resulted from natural causes; that the pre-operative, intra-operative, and post-operative care and treatment rendered to the plaintiff by the doctors in all respects complied with the standard of care prevalent in the medical profession generally under the same conditions and like surrounding circumstances.

In opposition to the defendants' motion for summary judgment, the plaintiff offered the affidavit of Kenneth Fox, M. D. and ophthalmologist. The affidavit besides reciting the affiant's qualifications he stated was familiar with the standards of practice in ophthalmology for communities of the same size as Atlanta, and similar communities, and for the time in question, 1979.

In the affidavit it was set forth that the doctor had reviewed "certain of the medical records, including some from Emory University Hospital [where the operations were performed]." It was then stated: "It is my professional opinion that if intraocular pressures were not sufficiently elevated in either eye, or, if sufficiently elevated, that they could have likely been controlled without surgery being performed in either eye, then surgery on either eye would have been inappropriate because of the enhanced risk of complications from such surgery . . . No information available to me in the above matter suggests that the pressure was elevated in the left eye particularly prior to surgery, and no information available to me suggests that certain medications which could have been utilized to attempt to control the pressure in either eye, were utilized by any of the Ophthalmologists prior to surgery. No information available to me documents the advanced stage of the glaucomatous loss of visual field in either eye prior to surgery." Finding no other evidence by the plaintiff contradicting the affidavits by the defendants, the trial judge granted the motion for summary judgment to the defendants. The plaintiff appeals. *Held:*

We recognize the oft-quoted rule as to construction of proof on motion for summary judgment and on whom the burden lies. *Dobbs v. Nat. Bank of Ga.,* 163 Ga. App. 413 (294 SE2d 632); *Hamlet v. Mr. Zippy, Inc.,* 163 Ga. App. 865 (294 SE2d 671). This court conscientiously applies these principles in every summary judgment case. Nevertheless, the Supreme Court has placed a more rigorous burden on a plaintiff who seeks to recover for medical malpractice. As this court pointed out in *Hardinger v. Park,* 159 Ga. App. 729 (285 SE2d 212): "A physician moving for summary judgment in a medical

malpractice case may rely on his own affidavit, submitted in his capacity as an expert, that he was not negligent; and to avoid summary judgment, the plaintiff must then produce expert testimony to the contrary." Accord, *Parker v. Knight,* 245 Ga. 782 (3) (267 SE2d 222); *Payne v. Golden,* 245 Ga. 784 (267 SE2d 211).

The standard of care for physicians, unlike that for hospitals, (see *Smith v. Hospital Auth.,* 161 Ga. App. 657 (288 SE2d 715)), is not for the particular locality or community where the tort was committed but the standard of care considered by the profession generally to represent a reasonable degree of care and skill. *Murphy v. Little,* 112 Ga. App. 517, 522 (145 SE2d 760); *Fain v. Moore,* 155 Ga. App. 209 (270 SE2d 375); *Fain v. Moore,* 161 Ga. App. 368 (288 SE2d 317). Here, we observe that the plaintiff's expert did not depose as to that standard.

Furthermore, the plaintiff must establish, by expert testimony, "the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice." *Self v. Executive Committee of Ga. Baptist Convention,* 245 Ga. 548, 549 (266 SE2d 168). An expert's statement that in his opinion certain procedures should have been utilized does not establish the required standard. *Kenney v. Piedmont Hosp.,* 136 Ga. App. 660, 664 (222 SE2d 162); *Wagner v. Timms,* 158 Ga. App. 538, 539 (281 SE2d 295). The question of compliance with the proper medical standard, as tersely stated in *Slack v. Moorhead,* 152 Ga. App. 68, 71 (262 SE2d 186), is not determined by "what a particular doctor would do in the circumstances." Accord, *Mayo v. McClung,* 83 Ga. App. 548, 556 (2a) (64 SE2d 330).

Under our law (OCGA § 31-9-6 (Code Ann. § 88-2906)) regarding the disclosure necessary in order to effect a valid consent, a physician must inform his patient of the general terms of treatment but a disclosure of the "risks of treatment" need not be given. *Young v. Yarn,* 136 Ga. App. 737, 738 (222 SE2d 113). Here the plaintiff patient was fully informed as to her condition, the risks of hemorrhage and complications inherent in the type of surgery proposed and as to the chances of success by surgery. According to the undisputed proof, she freely and voluntarily consented and elected to have the surgery in question. There is no evidence of negligence in the performance of the surgery; instead the proof shows comportment with the standard of care required. "In an action brought by a patient against his physician or surgeon for malpractice, the presumption is that the medical or surgical services were performed in an ordinarily skilful manner, and the burden is on the one receiving the services to show a want of due care, skill, and diligence." *Shea v. Phillips,* 213 Ga. 269, 271 (2) (98 SE2d 552). "The fact that a patient develops a known

complication to surgery is not proof of negligence." *Fox v. Cohen,* 160 Ga. App. 270, 271 (287 SE2d 272).

It should be further noted that the affidavit offered in opposition to the motion for summary judgment showed that the doctor's opinion was predicated on "certain of the medical records, including some from Emory University Hospital," and is couched in terms of "information available to me." But the main thrust of his opinion is that surgery was risky and that other methods might have been sufficient and that if certain conditions were present then surgery would have been inappropriate. Under the cases cited and others we have reviewed, we find the trial judge correctly held that the plaintiff's proof failed to contradict as to a material issue the proof offered by the defendants.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 8, 1983.

*Christopher D. Parker,* for appellant.
*Hunter S. Allen, Jr.,* for appellees.