67947, 67948. BEATTY v. MORGAN; and vice versa.

BIRDSONG, Judge.

This appeal arises from a directed verdict in favor of appellee/physician in this medical malpractice action. Appellant's enumeration of error challenges the propriety of the directed verdict. Appellee has filed a cross-appeal challenging the trial court's allowance of the testimony of appellant's expert witness. Because a reversal of the trial court's decision concerning the testimony of the expert witness would mandate affirmance of the directed verdict, we will first address the issue presented by the cross-appeal. *Held:*

1. The trial court did not err in permitting appellant's expert physician, Dr. Douglas C. Beatty, who is also appellant's father, to testify as to the applicable standard of care and appellee's adherence to that standard in his treatment of appellant. The gravamen of this case concerns appellee's failure to diagnose appellant's bladder cancer. The evidence established that appellant had acute prostatitis for several years prior to his latest treatment by appellee. The diagnosis and treatment by appellee involved in this case began on January 22, 1980. On February 14, 1980, appellee, a specialist in urology, performed a cystourethroscopic examination and a follow-up transurethral resection (TUR) of the prostate gland in which he removed a benign enlargement obstructing appellant's urinary tract. Appellant testified that in spite of the TUR, he continued to suffer from symptoms of pain and urinary frequency and urgency. Approximately five months after his final treatment by appellee, another physician diagnosed appellant as having bladder cancer, which resulted in the removal of his bladder.

Appellee's challenge to the competency of Dr. Beatty is based upon the evidence showing that Dr. Beatty, although a licensed physician engaged in the general practice of medicine, is not a specialist in urology and, by his own admission, would not attempt personally to perform the diagnostic and surgical techniques employed in the diagnosis and treatment of bladder cancer and other urological problems. Citing several cases from other jurisdictions, appellee contends that "Dr. Beatty simply does not possess the requisite training or experi-

ence to qualify as an expert on urological matters," despite the undisputed fact that both appellee and Dr. Beatty practiced the same school of medicine, i.e., allopathy, or conventional medicine.

The law of this state has not reached the point at which a physician testifying as an expert witness on the standard of care exercised by another physician is required to be a specialist in the area of medicine practiced by the other physician. In fact, this court recently stated that even "the barriers between schools of practice are not insurmountable in this state" (*Sandford v. Howard*, 161 Ga. App. 495, 498 (288 SE2d 739)), provided "there is proof by competent evidence that the methods of treatment are the same despite the difference in the nomenclature of the schools involved . . ." Id. p. 497. " 'A witness with such skill, knowledge or experience in a field or calling as to be able to draw an inference that could not be drawn by the average layman may be qualified as an expert witness.' [Cit.] 'Medical experts are persons possessing technical and peculiar knowledge, and any person learned in medical or physiological matters is qualified to testify as an expert thereon, even though he is not a medical practitioner.' [Cit.]" *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832).

Although Dr. Beatty was subject to thorough and effective cross-examination regarding his credentials, the evidence adduced through this examination did not affect his competency but affected merely his credibility, which was a matter for the jury. It is undisputed that Dr. Beatty is a graduate of the Medical College of Georgia, is a physician licensed to practice in Georgia and Colorado, and is a physician engaged in the general practice of medicine, which frequently involves initial diagnosis of urological problems. Under these circumstances, irrespective of the credibility of Dr. Beatty's testimony, it is clear that he is a "person learned in medical . . . matters" (*Avret*, supra) and was competent to testify as to the standard of care in the medical profession generally and specifically as to appellee's treatment of Dr. Beatty's son. Accordingly, appellee's cross-appeal is without merit.

2. Because we have decided that Dr. Beatty was competent to testify as an expert witness in this case, we must address the question of whether appellant adduced evidence creating a jury issue as to appellee's negligence. The trial court concluded that appellant had failed to develop against appellee a cause of action for medical malpractice.

Appellant contends that the evidence supported the following specific allegations of malpractice: (1) that appellee negligently failed to diagnose appellant's bladder cancer in view of the facts that no urine culture, cytology study, or adequate history were obtained; (2) that appellee negligently performed an unnecessary TUR; (3) that appellee abandoned appellant. Concerning the first two specifications of negligence, Dr. Beatty testified as follows: "Q. Are you familiar with

the standard of care generally required of physicians in the treatment of urinary tract problems such as we have been talking about today? A. Yes. Q. Did Dr. Morgan's treatment meet those standards? A. No. Q. In what respect did his treatment not meet those standards? A. . . . no urine culture was at any time ordered. . . . Q. You mentioned previously a cytology study, is that correct? A. Yes. Q. You also mentioned a history of cancer? A. Yes. Q. The failure to order a cytology study under those circumstances, would that meet the standard of care expected of physicians — A. No. . . . With a persistence of pain, the finding of persistence of symptoms that he has had in spite of treatment with an antibiotic, his age, his social habits, would absolutely dictate that one would somewhere consider that this man may have cancer of the bladder. Q. . . . Could you tell us specifically what did not [meet the standards appropriate for medical practice]? A. I felt it was inappropriate to diagnose a urinary tract infection and not obtain urine cultures. It was inappropriate not to do standard tests which would reveal abnormality of the bladder. It was inappropriate not to consider the normal tests which seemed to be a clear indication that something else was going on in his case. Q. . . . Do you have an opinion within a reasonable medical certainty as to whether . . . the TUR performed upon Mr. Beatty was indicated? A. . . . My opinion is that under the particular circumstances of his case the TUR was not appropriate . . . because the test which would normally discover the abnormality of the bladder had not been done. There is no evidence that there was even a consideration by Dr. Morgan that he may have had a neoplasm of the bladder." Dr. Beatty further testified that appellee failed to meet the appropriate standard of care by performing a TUR and that appellee's maintenance of medical records did not meet the standard of care, although there was no evidence that the latter allegation was causally related in any way to appellant's alleged maladies.

After careful review of the testimony in this case, we cannot conclude that appellee was entitled to a directed verdict. The specific acts of malpractice relating to the failure to diagnose bladder cancer and the performance of a TUR alleged by appellant are supported by Dr. Beatty's testimony. "An expert's statement that in his opinion certain procedures should have been utilized does not establish the required standard." *Sikorski v. Bell*, 167 Ga. App. 803, 805. (307 SE2d 701). See also *Massee v. Hattaway*, 167 Ga. App. 870, 871 (308 SE2d 24); *Jackson v. Gershon*, 165 Ga. App. 492, 493 (300 SE2d 335); *Wagner v. Timms*, 158 Ga. App. 538, 539 (281 SE2d 295); *Slack v. Moorhead*, 152 Ga. App. 68, 71 (262 SE2d 186); *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 664 (222 SE2d 162); *Mayo v. McClung*, 83 Ga. App. 548, 556 (2a) (64 SE2d 330). However, Dr. Beatty's testimony in this case, when construed in the light most favorable to ap-

pellant, contained the opinion that appellee's failure to perform certain diagnostic tests and procedures failed to meet the requisite standard of care rather than meeting Dr. Beatty's personal standard.

Appellee further contends that even if a fact finder could conclude that he failed to adhere to the requisite standard of care in the treatment of appellant, there is no evidence that appellant was suffering from bladder cancer at the time he was examined and treated by appellee. However, appellant testified that the same symptoms continued unabated subsequent to his treatment by appellee and until the removal of his bladder. While there is no direct evidence of bladder cancer during the time that appellee treated appellant, there is circumstantial evidence from which a fact finder might reasonably infer that appellant's bladder cancer may have been present during the relevant time period.

Appellee finally contends that the evidence fails to demonstrate any causal connection between appellee's alleged acts of negligence and any injuries sustained by appellant. This argument is based upon the proposition that appellant's bladder and prostate would have been removed in any event, and were in fact removed completely, as a result of the bladder cancer. However, this contention ignores the allegations that appellant sustained five additional months of pain and other symptoms associated with the bladder cancer as a result of appellee's negligent diagnosis and that appellant underwent an unnecessary TUR as a result of appellee's alleged negligent treatment. We cannot conclude that the record is devoid of evidence supporting a causal relationship between appellant's allegations of negligence and injury.

Because there remained a conflict in the evidence as to material issues, the trial court erred in granting a directed verdict in favor of appellee as to appellee's potential liability to appellant for personal injuries sustained as an alleged result of appellee's diagnosis of appellant's urinary problems and the treatment prescribed therefor. OCGA § 9-11-50 (a).

3. We agree, however, that the trial court correctly directed a verdict in favor of appellee on the issue of abandonment. Appellant testified that approximately two months after his TUR he was admitted to West Paces Ferry Hospital for treatment of alcoholism. He stated that he requested, through the tending hospital physician, to see appellee because of continued urinary tract pain. He further testified that although appellee did not visit the hospital on his first day of admission, appellee did send a colleague to tend to appellant. There is no evidence in the record indicating that appellee's colleague was not competent in every respect to examine and treat appellant. After his discharge from West Paces Ferry Hospital, appellant sought the services of another urologist.

"If a physician abandons a case without giving such notice or providing a competent physician in his place, it is a failure to exercise that care required by law, which failure amounts to tort. 'Negligent failure to attend and treat a patient at a time when the need of treatment is known to the physician and there is opportunity to apply proper treatment amounts to the same as negligent treatment and the physician is answerable for such failure.'" *Norton v. Hamilton,* 92 Ga. App. 727, 731 (89 SE2d 809). As the evidence in this case fails to demonstrate that appellee at any time abandoned appellant without providing a competent physician, the trial court did not err in directing a verdict as to this cause of action. See *Kenney v. Piedmont Hosp.,* supra (2).

*Judgment affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion. Quillian, P. J., and Carley, J., concur.*

DECIDED APRIL 6, 1984.

*Alan B. Waln,* for appellant.
*Simuel F. Doster, Jr., Hunter S. Allen, Jr., William L. Ballard,* for appellee.