### 69867. SPIKES v. HEATH et al.
(332 SE2d 889)

BEASLEY, Judge.

Appellant Spikes filed a malpractice action against appellees Dr. George Heath and Dr. H. K. Heath, charging them with, *inter alia,* assault and battery in connection with the insertion of an intrauterine contraceptive device. Shortly after completion of the procedure, appellant suffered pain and bleeding, which continued for several days, and appellees were unable either to relieve the symptoms or to locate the intrauterine device. As a consequence, appellant found it necessary to consult another physician and subsequently to undergo extensive surgery to correct a perforated uterus. Appellant asserts that in consultation prior to her decision to have the device inserted, Dr. George Heath had wilfully misrepresented to her the risks and dangers associated with the procedure, and that Dr. H. K. Heath, who actually inserted the device, had also misrepresented the risks and dangers when, immediately prior to undergoing the procedure, she had asked whether there were risks or dangers involved. She alleged that she had been told that, unless she were pregnant, there were no risks and only minor side-effects.

Appellees moved for partial judgment on the pleadings on the assault and battery counts, and the trial court, treating the motion as one for partial summary judgment, ruled in appellees' favor. Appellant assigns error to this judgment, alleging fraudulent misrepresentation and further alleging that the determination of whether such misrepresentation occurred is for the jury. Appellant alleges, moreover, that the trial court acted improperly in treating appellees' motion for partial judgment on the pleadings as a motion for partial summary judgment. *Held:*

1. The record indicates that the trial court considered matters outside the pleadings, namely, the depositions of appellant, of Dr. H. K. Heath, and of the physician who performed the corrective surgery. When matters outside the pleadings are considered by the court on a motion for judgment on the pleadings, it is proper to treat the motion as one for summary judgment. OCGA § 9-11-12 (b); *Williams v. Parnell*, 162 Ga. App. 573 (292 SE2d 425) (1982); *Kiker v. Hefner*, 119 Ga. App. 629 (168 SE2d 637) (1969). The trial court did not err in so treating appellees' motion.

2. Georgia does not subscribe to the breadth of the doctrine commonly known as "informed consent" in transactions between physician and patient. See, e.g., *Parr v. Palmyra Park Hosp.*, 139 Ga. App. 457 (228 SE2d 596) (1976); *McMullen v. Vaughan*, 138 Ga. App. 718 (227 SE2d 440) (1976).[1] The rule in Georgia is that, although a physician must inform his patient of the general terms of the treatment to be undertaken, there is no affirmative duty to disclose the risks involved in the treatment. *Robinson v. Parrish*, 251 Ga. 496 (306 SE2d 922) (1983); *Hyles v. Cockrill*, 169 Ga. App. 132, 133 (312 SE2d 124) (1983); *Sikorski v. Bell*, 167 Ga. App. 803 (307 SE2d 701) (1983).[2] The General Assembly provided that the 1971 statute requiring valid consent to surgical or medical treatment "shall be liberally construed." OCGA § 31-9-6 (a). The consent which discloses in general terms the treatment in connection with which the consent is given ". . . and which is duly evidenced in writing and signed by the patient . . . shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the [consent]." OCGA § 31-9-6 (d). But this presumption applies when the consent is in writing, *Fox v. Cohen*, 160 Ga. App. 270 (287 SE2d 272) (1981), which is not the case here. Consequently, the conclusive presumption does not obtain. *Parr v. Palmyra Park Hosp.*, supra at 460.

But even where the consent is technically defective or where there is no written consent, summary judgment for the defendant-physician is authorized if it can be shown that the patient knew, from any source whatever, the general course of the treatment to be undertaken. *Parr v. Palmyra Park Hosp.*, supra. Where there is no evidence of fraudulent misrepresentation by the physician in obtaining his patient's consent to a given course of treatment, the signed consent is conclusively presumed to be valid. *Cole v. Jordan*, 161 Ga. App. 409

---

[1] Smith, Gary R., "Georgia's Medical Consent Law," 21 Ga. State Bar J. 138 (May 1985).

[2] In *Simpson v. Dickson*, 167 Ga. App. 344, 347 (306 SE2d 404) (1983), the controversial nature of the Georgia rule is noted. The court points out that the interpretation given the statute in *Young v. Yarn*, infra, has been consistently followed by our appellate courts and that if Georgia citizens are dissatisfied with the Georgia courts' rejection of the "informed consent" doctrine as it prevails elsewhere, their remedy lies in legislation which would alter the rule presently followed.

(288 SE2d 260) (1982); *Fox v. Cohen,* supra; see also *Young v. Yarn,* 136 Ga. App. 737 (1) (222 SE2d 113) (1975).

It is not disputed that plaintiff gave consent to the insertion of an IUD into her body. Actually she had sought it upon recommendation of Dr. George Heath when she began having headaches and nervousness with the pill she had been taking for four or five years as prescribed by the doctors Heath. But she had first wanted to know the risks ("side effects and dangers"), so inquired. She claims that she consented to the procedure based on the doctors' answer, to her inquiry, that there were no risks unless she were pregnant, which she was not. According to the deposition of the doctor who finally removed the device, one of the "well-known complications of I. U. D. insertions" is that the device will perforate the uterus. Another physician states by way of affidavit that "one of the dangers of inserting an intrauterine device is that the intrauterine device may perforate the patient's uterus."

The question is whether the consent was valid. The law expressly recognizes that it is not valid if it was obtained by fraudulent misrepresentations of material facts. Mere negligence is not enough. The law of fraud in this state gives guidance as to what is meant here. It is that: "Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party." OCGA § 51-6-1. "Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action." OCGA § 51-6-2 (a). Georgia also recognizes that "[a] fraud may be committed by acts as well as words." OCGA § 51-6-4 (a). "Actual fraud consists of any kind of artifice by which another is deceived. Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." OCGA § 23-2-51 (b).

With that in mind, we turn to the situation at hand. Although, as we have said, a physician does not have an affirmative duty to warn of risks,[3] where he undertakes to do so in response to the patient's inquiry, he must of course be truthful. That is to say, inducing consent by misrepresenting facts which are material to whether or not consent is given may be fraudulent. "If, in fact, the plaintiff's consent to the performance of the [surgery or medical treatment] was obtained as a result of fraudulent misrepresentations, then a tort was indeed com-

---

[3] "[U]nder *Young,* appellant's contention that appellee would be liable if he negligently breached a duty to disclose specific risks and dangers of treatment is without merit." *Blount v. Moore,* 159 Ga. App. 80 (4) (282 SE2d 720) (1981).

mitted upon her. As a general rule, there is consent to a tortious act only 'if that consent is free and not obtained by fraud . . .' Code § 105-1803 [OCGA § 51-11-2]." *Pritchard v. Neal*, 139 Ga. App. 512, 513-514 (229 SE2d 18) (1976). That evidence of fraud or misrepresentation may take the case outside the scope of OCGA § 31-9-6 or the holding in *Young* was recognized in *Holbrook v. Schatten*, 165 Ga. App. 217, 218 (299 SE2d 128) (1983). But that fraud must be more than the mere failure to disclose certain risks of treatment, *Holbrook*, supra, that is, it must be more than silence per se.

There exists between a doctor and a patient a relationship of trust and confidence. *Leagan v. Levine*, 158 Ga. App. 293 (1) (279 SE2d 741) (1981); *Sutlive v. Hackney*, 164 Ga. App. 740, 742 (297 SE2d 515) (1982); *Wade v. Thomasville Orthopedic Clinic*, 167 Ga. App. 278, 280 (306 SE2d 366) (1983). " 'Where a person sustains towards [another] a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation.' [Cits.]" *Sutlive*, supra at 742; see also *Wade*, supra at 281, and *Leagan*, supra at 293. Thus, even if there is no affirmative duty under the law of Georgia to tell the patient what the risks of the contemplated treatment are, the existence of the confidential relationship adds an element of obligation. *Sutlive*, supra at 742. Surely the obligation to be truthful in responding to the patient's inquiry is inherent in this relationship. "This court recently stated that 'a patient has the right to believe what he is told by his [physician] about his condition.' [Cit.]" *Sutlive*, supra at 742. The court in *Sutlive* went on to conclude that "[c]ertainly, the same right to rely on the lack of danger of leakage obtains in this situation." *Sutlive*, supra at 742. There the court was dealing with the doctor's response to the patient's questions, which is precisely the situation here.

In this case, the patient's evidence is that her consent was bottomed on the assurance of the doctors that there would be no risk to her and that she made clear that the consent was based on that representation. This is not the same thing as saying that silence as to risk is actionable in Georgia, which it is not. *Padgett v. Ferrier*, 172 Ga. App. 335 (1) (323 SE2d 166) (1984). The law does not impose on the doctor the duty to speak about risks. But when he does speak, at least in response to a specific question concerning risk posed by his patient, a duty arises to speak truthfully.

If in fact the representations were false, and the jury is persuaded that the other elements of fraud were present, plaintiff would be entitled to recover on the cause of action for assault and battery because of the absence of valid consent. Summary judgment in this framework is not warranted.

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Carley*

*and Pope, JJ., concur. Banke, C. J., concurs in the judgment only. Deen, P. J., Sognier and Benham, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

In the instant case it is undisputed that appellant knew in advance what treatment would be undertaken. Appellant has offered no competent evidence that appellees, or either of them, made wilful misrepresentations as to the risks or dangers attendant upon the procedure. The testimony of the physicians who appeared in appellant's behalf was, at best, equivocal on this point.

Moreover, since under Georgia law the physician has no affirmative duty to disclose the risks of treatment, silence as to the mere remote possibility of perforation does not constitute fraud. See *Padgett v. Ferrier*, 172 Ga. App. 335 (323 SE2d 166) (1984). Thus there exists in the instant case no fraud which would vitiate the validity of appellant's consent to the procedure, or which would activate the provisions of such Code sections as §§ 51-6-1, 51-6-2 (a), 51-6-4 (a), or 51-11-2.

The interpretation given to OCGA § 31-9-6 in *Young v. Yarn*, 136 Ga. App. 737 (222 SE2d 113) (1975), has been consistently followed by the courts of this state on the principle of *stare decisis*. See *Simpson v. Dickson*, 167 Ga. App. 344 (306 SE2d 404) (1983); see also *Butler v. Brown*, 162 Ga. App. 376 (290 SE2d 293) (1982); *Blount v. Moore*, 159 Ga. App. 80 (282 SE2d 720) (1981).

In deliberating on the case *sub judice*, we are constrained to reiterate the considerations set forth in *Simpson v. Dickson*, supra, and to conclude that the judgment below should be affirmed. I therefore respectfully dissent. I am authorized to state that Judge Sognier and Judge Benham join in this dissent.

DECIDED MAY 29, 1985 —
REHEARING DENIED JUNE 21, 1985 — 

*Earl Daniel Smith, Jr.*, for appellant.
*Terry A. Dillard*, for appellees.