A95A0980. SMITH v. WILFONG.
(462 SE2d 163)

ANDREWS, Judge.

Smith appeals from the trial court's grant of summary judgment to Dr. Wilfong, her former urologist/surgeon, on the second count of

her recast complaint, which alleged assault and battery.[1]

Viewed under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), the following facts were uncontested. Smith, who was diabetic, had suffered previous bouts of lower back pain for which she sought treatment from her regular physicians. On February 8, 1988, she went to an emergency room complaining of lower back pain and running a temperature. At that time, she denied any pain on urination.

Over the next several weeks, she continued to see different physicians about this problem[2] and eventually sought treatment at the Coliseum Urgent Care Center where she was admitted on March 4, 1988, at which time she had no fever but continued to be in pain. An emergency room physician called in Dr. Wilfong. Prior to his seeing her, she had undergone an IVP test, a CT examination, and computerized tomography. These tests revealed some "mass defect" or difference in density in the right kidney. The IVP reported an "apparent mass off the superior pole of the right kidney. . . ." The CT found a two-by-three-centimeter collection of fluid in a subcapsular location on the right kidney, "which has the CT configuration of a subcapsular hematoma" and no verifiable indication of any inflammatory process, which would be present in an abscess.

Viewing the contested facts with all inferences in Smith's favor, *Mackinnon v. Hodge*, 204 Ga. App. 539 (420 SE2d 341) (1992), they were that Dr. Wilfong had an arteriogram performed on Smith on March 7, the results of which were also consistent with a subcapsular hematoma. While no objective evidence of a tumor had been shown on these tests, Dr. Wilfong opined, as well as Smith's experts, that such a spontaneous hematoma could be an indication of tumor activity, even though not yet visible on the tests. Smith's experts' primary difference with Wilfong's analysis was in the percentage of possibility of such a tumor, Wilfong saying 80 percent and the others 20 to 30 percent.

On March 7, Smith signed a printed "Authorization for Surgical Treatment," containing the following: "I . . . hereby authorize Dr. Wilfong . . . to administer such treatment as is necessary, and to perform the following operation: Right Nephrectomy [removal of the right kidney] and such additional operations or procedures as are considered therapeutically necessary on the basis of findings during the course of said operation." The underlined portions were handwritten, the remainder typed.

Upon operating, Dr. Wilfong found a renal abscess, not a subcap-

---

[1] The remaining count of medical malpractice remains pending below.

[2] Smith acknowledges that she did not report her prior visits to other doctors as she saw different ones, either in the emergency room or at her private practitioner's office.

sular hematoma. Also, the kidney was densely adhered to surrounding structures, and it was inflamed. The kidney was removed.

Smith does not contend that the removal of her right kidney was improperly done, only that a more conservative treatment of IV antibiotics might have saved her kidney. She acknowledges signing the consent but contends that the consent was fraudulently obtained by Dr. Wilfong's telling her that: 1) her kidney was "enlarged to the size of a football"; 2) the kidney was surrounded by blood or fluid; 3) there was a tumor-like cyst on the kidney, and it was best to remove it; 4) it would not do any good to send her home on antibiotics because she would only be back in two or three days; and 5) her kidney was "no more good."

1. In answering the recast complaint, Dr. Wilfong asserted the statute of limitation as a defense. This ground was also addressed in his motion for summary judgment. Since the trial court's order granting the motion as to the assault and battery count does not state the basis upon which it was granted, we must consider all possible theories which could support it.

Under OCGA § 9-3-33, an action for assault and battery "shall be brought within two years after the right of action accrues[.]" Smith signed the consent form on March 7, and the surgery occurred on March 8, 1988. Her original complaint was filed on February 7, 1990, alleging medical malpractice. Smith's deposition was taken on May 24, 1990, at which time she was aware of Wilfong's allegedly fraudulent statements she claims induced her into signing the consent form. The recast complaint alleging assault and battery was filed on February 4, 1993.

OCGA § 9-11-15 provides in subsection (a) that "[a] party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." Subsection (c) provides that "[w]henever the claim . . . asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Nothing in the record indicates the entry of a pretrial order, leaving the issue of whether the assault and battery count added by amendment arose out of the same conduct, transaction, or occurrence giving rise to the original malpractice count. *Dover Place Apts. v. A & M Plumbing &c. Co.*, 167 Ga. App. 732, 734 (307 SE2d 530) (1983); see *Day v. Norman*, 207 Ga. App. 37, 38 (1) (427 SE2d 31) (1993).

" '[T]he question of relation back of the amendment . . . turns on fair notice of the *same general fact situation* from which the claim arises. [Cits.]' (Emphasis supplied.) [Cit.] 'It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because (of) the assertion of a new cause of

action is no longer applicable unless the causes of the action are not only different but *arise out of wholly different facts*.' (Emphasis supplied.) [Cit.]" *Dover Place Apts.*, supra at 734.

It cannot be said that the alleged malpractice in diagnosing Smith's kidney problem and the alleged unauthorized touching involved in the operation due to the claimed fraudulently obtained consent arise from wholly different facts. Therefore, the amendment relates back to the original complaint and is not barred by the statute of limitation. *Morris v. Chewning*, 201 Ga. App. 658 (411 SE2d 891) (1991); see *Gordon v. Gillespie*, 135 Ga. App. 369, 375 (1) (217 SE2d 628) (1975).

The statute of limitation could not have been the legal premise upon which the trial court granted summary judgment on the assault and battery claim, absent a finding by the court that Smith's delay in filing the amendment was the result of laches or unexcusable delay on her part. *Morris*, supra; *Gordon*, supra. The only evidence relied upon by Wilfong as reflecting laches or unexcusable delay is the two years and seven months which elapsed between the original and recast complaints. Mere lapse of time in filing an amendment is not enough to bar the amendment absent demonstrated prejudice to the opposing party. *Morris*, supra; *Gordon*, supra. Here, there has been no showing of such prejudice.

2. "In order '(t)o prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. [Cits.]' [Cits.]" *Willis v. Allen*, 188 Ga. App. 390, 391 (373 SE2d 79) (1988).

The issue of the medical appropriateness of the removal of the entire kidney is subject to dispute and still pending in the malpractice claim. Even assuming, however, that Dr. Wilfong's diagnosis and treatment comported with medical standards, that does not settle the matter of the assault and battery. "Even if medical treatment is recommended and would be in the patient's best interest, the patient has the right to refuse such treatment in the absence of conflicting state interest. [Cits.]" *Joiner v. Lee*, 197 Ga. App. 754, 756 (1) (399 SE2d 516) (1990).

Dr. Wilfong denied telling Smith that her kidney was enlarged to the size of a football, was surrounded by blood or fluid, further antibiotic treatment was of little avail, and that her kidney was no good.[3] Smith's affidavit in opposition to summary judgment states that she

---

[3] He acknowledges that he told her there was the possibility of a tumor and some of the tests reflected a mass.

"consented to the removal of my right kidney relying on the representations and recommendations of Dr. Wilfong. . . . If I had known that my right kidney was functioning normally; that it was not enlarged to the size of a football; that there was no evidence of significant or major bleeding in or around the kidney; that there was not evidence of a tumor like cyst; and that there was an alternative to the nephrectomy that could save my kidney without surgery, I would not have consented to the surgery." Smith's expert nephrologist stated that needle aspiration should have been tried before a total nephrectomy was performed and that prolonged treatment with antibiotics was a viable alternative treatment.

"The question is whether the consent was valid. The law expressly recognizes that it is not valid if it was obtained by fraudulent misrepresentations of material facts. [See OCGA § 31-9-6.] Mere negligence is not enough. The law of fraud in this state . . . is that: 'Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party.' OCGA § 51-6-1. 'Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to [her] injury, will give [her] a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action.' OCGA § 51-6-2 (a). Georgia also recognizes that '(a) fraud may be committed by acts as well as words.' OCGA § 51-6-4 (a). 'Actual fraud consists of any kind of artifice by which another is deceived. Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another.' OCGA § 23-2-51 (b)." *Spikes v. Heath*, 175 Ga. App. 187, 189 (2) (332 SE2d 889) (1985).

Here, the dispute as to what was said between doctor and patient creates questions of fact which involve credibility. Such questions are not appropriate for resolution on summary judgment. *Spikes*, supra; *Joiner*, supra. Compare *Kelly v. Reid*, 186 Ga. App. 89, 90 (1) (366 SE2d 315) (1988) (no evidence of fraudulent misrepresentations).

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

Decided September 1, 1995 —
Reconsideration denied September 13, 1995 — ▉▉▉▉▉

*Thomas W. Bennett*, for appellant.
*Chambless, Higdon & Carson, Joseph H. Chambless, James D. Tolliver*, for appellee.