A00A0752. CAMPBELL et al. v. BREEDLOVE.
(535 SE2d 308)

JOHNSON, Chief Judge.

Sylvia Campbell and her husband David Campbell sued Sylvia Campbell's obstetrician for medical malpractice and battery after their child died in utero. The jury returned a verdict for the physician. The Campbells appeal from the judgment entered on the verdict, contesting certain evidentiary rulings. Because we have determined that either no error or no reversible error occurred, we affirm.

The record shows that on April 2, 1996, when Mrs. Campbell was 34 weeks pregnant, the obstetrician told her that the baby was in breech presentation and that he would attempt to turn the fetus by an external cephalic version procedure. This procedure is one in which the physician manipulates the outside of the mother's abdomen to turn the baby from a breech presentation to a vertex or head-first presentation. The obstetrician, Dr. David Breedlove, attempted the procedure in his office that day, on April 16, 1996, and again on April 23, 1996. He was unsuccessful on each occasion.

[6] *Storey v. Austin* 221 Ga. 692, 695-696 (1) (146 SE2d 728) (1966).
[7] *Atkinson*, supra.

According to Mrs. Campbell, before the first attempt to turn the fetus, she asked Dr. Breedlove whether the procedure was safe, whether the procedure would cause premature labor or bleeding, and whether it would harm the baby. Dr. Breedlove responded that he had been successful in the past in performing the procedure and that there was "nothing to worry about." Mrs. Campbell testified that before the second and third attempts she again questioned Dr. Breedlove about the safety of the procedure. At trial, Dr. Breedlove denied that Mrs. Campbell had asked questions about any risks and denied that he had told her that there was no need to worry. It is, however, undisputed that Dr. Breedlove never disclosed any of the risks associated with the procedure.

On May 4, because she no longer felt fetal movement, Mrs. Campbell went to the hospital, where Dr. Breedlove determined that her baby had died in utero. During the delivery of the stillborn baby, Dr. Breedlove observed that the umbilical cord was wrapped tightly three times around the baby's neck and told Mrs. Campbell that the cord entanglement was a likely cause of her child's death.

The Campbells sued Dr. Breedlove for medical malpractice, alleging that he breached the standard of care when he attempted the procedure without using certain screening and monitoring devices. The Campbells amended their complaint to include a claim for battery based on the theory that Mrs. Campbell's consent to the procedure was obtained by fraud. They alleged that Dr. Breedlove failed to inform them of the general terms of the procedure and that he failed to disclose the material risks in response to Mrs. Campbell's inquiries.

Before trial, Dr. Breedlove moved in limine to exclude evidence of informed consent, arguing that informed consent did not apply in this case. The trial court determined that this case did not involve any of the specific surgical or diagnostic procedures set forth in OCGA § 31-9-6.1 and so excluded evidence regarding informed consent to prove a violation under that Code section. However, the trial court ruled that evidence of informed consent would be permitted to prove a violation of OCGA § 31-9-6, which sets out more general requirements for establishing valid consent to medical treatment.

After the close of evidence, the trial court directed a verdict against the Campbells with respect to their fraud claim. The jury returned a verdict for Dr. Breedlove as to the malpractice claim, and the trial court entered judgment on the verdict. The Campbells appeal, claiming that the trial court improperly excluded their medical expert's testimony regarding their battery claim. We are not called upon to address, in this case, the issue of whether the physician had a legal duty to warn of the risks of this particular procedure under OCGA § 31-9-6.1.

As an initial matter, we note that the Campbells' brief does not comply with this Court's rules.[1] All enumerations of error are argued collectively and with the arguments intermingled.

> Our requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; . . . a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.[2]

1. The Campbells contend that the trial court erred by precluding their medical expert from testifying about Dr. Breedlove's failure to disclose the known risks of the external cephalic version procedure. They argue that the expert should have been allowed to describe the risks, to testify that such risks are well known in the obstetrical community, and to opine that Dr. Breedlove was untruthful when he responded to Mrs. Campbell's inquiries.

At the outset, we note that under current law in Georgia, a physician does not have an affirmative duty to warn of risks; however, where he undertakes to do so in response to the patient's inquiry, he must be truthful.[3] In this case, we do not consider whether the defendant had or should have had an affirmative duty to warn of the risks absent an inquiry, as the Campbells do not raise that issue. The only issues raised regarding the physician's duty to warn here concern the patient's inquiry, the truthfulness of the physician's response thereto, and the evidence allowed in regard to these issues.

Although the trial court's order on Dr. Breedlove's motion in limine appears not to have excluded evidence to prove the battery claim, during the trial the court stated, "[The Campbells' medical expert] may not testify as to the failure to inform concerning risks of treatment or the risk of the procedure, or testify as to what those risks are. . . . He can't testify as to the failure to warn." But the record shows that the Campbells' medical expert testified extensively of risks associated with the procedure, including premature birth, premature rupture of membranes, a prolapsed cord, cord entanglement, a dislodged placenta, and fetal death. The Campbells' expert stated that the risks were well known and appreciated in the obstetrical community. Their medical expert named additional considera-

---

[1] See Court of Appeals Rule 27 (c) (1).

[2] (Citation omitted.) *Aldalassi v. Drummond*, 223 Ga. App. 192 (1) (477 SE2d 372) (1996).

[3] See *Albany Urology Clinic, P.C. v. Cleveland*, 272 Ga. 296 (528 SE2d 777) (2000); *Spikes v. Heath*, 175 Ga. App. 187, 189 (2) (332 SE2d 889) (1985).

tions — such as medical illnesses, patient's weight, fluid volume, placenta location, cord location, and any anomaly with the baby — which could make the procedure more dangerous for a particular patient. Finally, he opined that Dr. Breedlove breached the standard of care by not using certain monitoring devices to make sure that the procedure was safe for the baby and the mother. Thus, the Campbells' assertions that their medical expert was precluded from testifying about the risks and whether Dr. Breedlove breached the standard of care is belied by the record.

We turn to the Campbells' assertion that their medical expert was erroneously precluded from opining that Dr. Breedlove's responses were untruthful. Mrs. Campbell claims that Dr. Breedlove's statement that there was no need to worry amounted to a misrepresentation and that her reliance on such misrepresentation negated her consent to the procedure.

"A cause of action for battery exists when treatment is performed by a physician without the consent of, or after withdrawal of consent by, the patient."[4] Consent is not valid if it was obtained by fraudulent misrepresentations of material facts.[5] Here, there was evidence of the risks, of Mrs. Campbell's inquiry, and of Dr. Breedlove's response. A factfinder could decide the issues of whether Mrs. Campbell asked questions about the risks and whether Dr. Breedlove's response that she need not worry, if made, was truthful. This was not a proper subject for opinion testimony.[6] Therefore, the trial court did not err in disallowing the witness to give an opinion about the truthfulness of Dr. Breedlove's alleged statements.

2. The Campbells contend that the trial court erred by permitting the defense to question Dr. Breedlove as to the known risks of the procedure, when the court did not allow their medical expert to testify as to the procedure's risks. However, as discussed above, the Campbells' expert did testify as to the risks and that they were well known in Dr. Breedlove's area of practice. Thus, we see no harm. Moreover, the Campbells have failed to show this Court where in the record the complained-of testimony may be found or that they objected below to the testimony of which they now complain. Indeed, Dr. Breedlove urges that he gave no such testimony. This contention

---

[4] (Citation and punctuation omitted.) *Kaplan v. Blank*, 204 Ga. App. 378 (1) (419 SE2d 127) (1992).

[5] *Smith v. Wilfong*, 218 Ga. App. 503, 507 (2) (462 SE2d 163) (1995); see OCGA § 31-9-6.

[6] See OCGA § 24-9-80; *Johnson v. Knebel*, 267 Ga. 853, 857 (485 SE2d 451) (1997); *Rose v. Figgie Intl.*, 229 Ga. App. 848, 857 (3) (a) (495 SE2d 77) (1997) (Georgia does not allow witnesses to opine that a party is lying or telling the truth); *Spikes*, supra at 189-190 (2) (question of whether physician made wilful misrepresentations of risks involved in procedures is for the jury).

presents nothing for review.[7]

3. The Campbells contend that the trial court erred by precluding their medical expert from testifying about Dr. Breedlove's failure to disclose the known risks of the external cephalic version procedure and then charging the jury:

> If you find that the patient made inquiry about the risks or safety of the procedure and that the defendant failed to truthfully disclose the known risks of the external cephalic version procedure to the plaintiff, then you could find that any consent the defendant obtained from the plaintiff to carry out the external version procedure was not authorized.

Again, the record shows that the Campbells' medical expert testified about the known risks of the procedure. While the evidence conflicts as to whether Mrs. Campbell asked about the risks associated with the procedure, it is undisputed that Dr. Breedlove did not disclose the risks to her. The charge contained a correct statement of Georgia law and was applicable to the issues being tried. Moreover, the record reflects that the Campbells requested this charge. The trial court did not err in giving it.[8]

*Judgment affirmed. Phipps, J., and McMurray, Senior Appellate Judge, concur.*

DECIDED MAY 31, 2000 —
RECONSIDERATION DENIED JULY 7, 2000 

*Ford Law Firm, James L. Ford, Sr., Jeffrey M. Gore,* for appellants.

*Forrester & Brim, Weymon H. Forrester,* for appellee.

---

[7] *Monroe v. Kersey*, 207 Ga. App. 108 (3) (427 SE2d 80) (1993).

[8] See *Moody v. Dykes*, 269 Ga. 217, 219-220 (3) (496 SE2d 907) (1998); *Efstathiou v. Reiss*, 227 Ga. App. 735, 737 (2) (490 SE2d 426) (1997); *Southern Bell Tel. &c. Co. v. Don Hammond, Inc.*, 198 Ga. App. 517, 518 (402 SE2d 112) (1991).